UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| THADDEUS JIMENEZ, | ) | CASE NO. 2:10-cv-00459-MJP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING THIRD PARTY |
| | ) | CAROLYN NIELSEN'S MOTION TO |
| CITY OF CHICAGO, et al., | ) | QUASH SUBPOENA DUCES |
| | ) | TECUM, FOR PROTECTIVE ORDER, |
| Defendants. | ) | AND FOR ATTORNEY'S FEES AND |
| | ) | COSTS |
| | ) | |

This matter is before the Court on third party Carolyn Nielsen's motion to quash a subpoena <u>duces tecum</u>, for a protective order barring future deposition, and for attorney's fees and costs. (Dkt. No. 8.) After reviewing the relevant briefs, rulings, declarations, and exhibits, the Court GRANTS the motion in its entirety.

**I. Background**

Plaintiff Jimenez was convicted of murder at 13 years of age and sentenced to 45 years in prison. During Plaintiff's trial, Nielsen, then a journalism graduate student at Northwestern University's Medill School of Journalism ("Medill"), gathered several documents relating to Plaintiff's case and eventually published an article about the trial in Medill's graduate news

ORDER GRANTING THIRD PARTY CAROLYN NIELSEN'S
MOTION TO QUASH SUBPOENA DUCES TECUM, FOR
PROTECTIVE ORDER, AND FOR ATTORNEY'S FEES AND
COSTS PAGE -1

magazine. After the trial, Nielsen kept in contact with Plaintiff via letters and phone calls. She retained records of these contacts, because she was considering writing a book about Plaintiff. Some of these contacts occurred while she was in Illinois, others occurred after she relocated to Washington.

Nielsen went on to write longer versions of the article and offered them to Chicago-area news publications. After graduation, Nielsen worked as a freelance journalist. She eventually moved to Washington and became a journalism professor at Western Washington University.

Plaintiff's conviction was reversed in 2009. Plaintiff then proceeded with this civil suit against Defendants. As part of this civil suit, Defendants issued subpoenas duces tecum Nielsen for her correspondence with Plaintiff as well as for a videotaped deposition. (Dkt. No. 8, Duran Decl., Ex. B.) Nielsen moves to quash Defendants' subpoenas duces tecum on grounds of journalist's privilege and undue burden. (Dkt. No. 8.) She further moves for a protective order against future deposition on the same grounds. (Id.) Finally, she moves for recovery of attorney's fees. (Id.)

**II. Choice of Circuit Precedent**

In their response, Defendants insist that this Court apply Seventh Circuit precedent denying the existence of journalist's privilege instead of the Ninth Circuit's established multi-factor test. Their argument is unpersuasive.

While the Ninth Circuit has yet to rule on this issue, the weight of authority supports Nielsen's position that Seventh Circuit precedent does not control. The D.C. and Second

01  Circuits have held that when a subpoena is served upon a third party in a different jurisdiction

02  than the originating case, the decisions of the court granting the subpoena are independent of

03  the circuit decisions binding the original case.  See, e.g., McCandless v. Beech Aircraft Corp.,

04  697 F.2d 1156 (D.C. Cir. 1983).   There is a "paramount interest in enforcing subpoenas

05  emanating from their jurisdiction in a predictable and consistent manner."   In re Ramaekers,

06  33 F. Supp. 2d 312, 315 (S.D.N.Y. 1999).   Procedural rules are best applied uniformly, and the

07  Ninth Circuit resists creating circuit splits unless the reason is compelling enough to outweigh

08  considerations noted by other circuits.   Kelton Arms Condo. Owners Ass'n v. Homestead Ins.

09  Co., 346 F.3d 1190, 1193 (9th Cir. 2003).

10      Defendants provide no authority for their claim that this Court is bound by Seventh

11  Circuit precedent, which does not recognize the existence of a federal journalist's privilege.

12  Instead, they argue that since "all of the reporting activities that led to the creation of the

13  documents . . . took place in Illinois," and the underlying case is being litigated in an Illinois

14  district court, the subpoena should be subject to the Seventh Circuit law.   (Dkt. No. 11 at 6.)

15  As a preliminary matter, part of this assertion is factually incorrect.   Nielsen provides proof

16  that many of the reporting activities related to the subpoenas occurred after she had moved

17  away from Illinois.   (Dkt. No. 10, Ex. D.)

18      Factual inaccuracy notwithstanding, there is no reason this Court should depart from

19  other circuits' reasoning regarding the handling of subpoenas.   The D.C. Circuit and a district

20  court in the Second Circuit have both ruled that subpoenas are subject to the precedent binding

21  their serving court, regardless of their origin.   See, e.g. McCandless, 697 F.2d 1156 at 1157; In

22

ORDER GRANTING THIRD PARTY CAROLYN NIELSEN'S
MOTION TO QUASH SUBPOENA DUCES TECUM, FOR
PROTECTIVE ORDER, AND FOR ATTORNEY'S FEES AND
COSTS PAGE -3

re Ramaekers, 33 F. Supp. 2d at 315.  The interest in enforcing subpoenas uniformly across jurisdictions weighs heavily in favor of following existing precedent.  The subpoenas in question will be assessed according to Ninth Circuit jurisprudence, which recognizes a constitutionally-based journalist's privilege and applies the multi-factor test articulated in Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II").

### III. Journalist's Privilege

In the alternative, though Defendants do not question Nielsen's right to claim journalist's privilege, they argue that the circumstances of this case require this Court to deny her the privilege.  None of the arguments supporting their position have merit.

**a. Nielsen's Eligibility to Claim Privilege**

The journalist's evidentiary privilege applies to people with the "intent to use material – sought, gathered or received – to disseminate information to the public [when] such intent existed at the inception of the newsgathering process."  Shoen v. Shoen, 5 F.3d 1289, 1293 (9th Cir. 1993) ("Shoen I").  Other circuits have generally extended the privilege to student journalists. See, e.g., Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir. 1977); Blum v. Schlegel, 150 F.R.D. 42 (W.D.N.Y. 1993).

Nielsen created some of the documents sought for the purpose of, and in the process of, writing an article about Plaintiff in her graduate school magazine.  (Dkt. No. 8 at 7.)  The remainder were created while she was a freelance journalist and resulted in a longer version of the article for broader distribution.  (Id.)  She retained the documentation because she intends

01 to write a book about Plaintiff. (Id.)

02 All of the documents were created with journalistic intent from inception, and
03 culminated or are intended to culminate in publicly-consumable publication. Given that other
04 circuits have not differentiated professional journalists from students in this context, this Court
05 finds no reason to deny her standing simply because she was a student when some of the
06 documents were created. Nielsen is eligible for journalist's privilege.

07 **b. Merits of Nielsen's Evidentiary Privilege**

08 Once the privilege is established, it is not inviolable. In order for the party requesting
09 evidence to overcome the privilege, the Ninth Circuit requires a showing that the information
10 sought is (a) unavailable after exhausting all reasonable alternative sources, (b) noncumulative,
11 and (c) clearly and actually relevant to an important issue in the case. Shoen II, 48 F.3d at 416.
12 The court should apply the test strictly to ensure that compelled disclosure is the exception, not
13 the rule. Id. The privilege belongs to the journalist, not the information; motions to quash
14 and for protective orders are analyzed the same way. See, e.g., Los Angeles Mem'l Coliseum
15 Comm'n v. Nat'l Football League, 89 F.R.D. 489, 495 (C.D. Cal. Jan. 5, 1981).

16 **i. Exhaustion of Alternative Sources**

17 Nielsen claims that Defendants failed to exhaust reasonable alternative sources for the
18 information they seek.

19 Defendants have not deposed Plaintiff or any other party regarding the documents and
20 communications between Nielsen and Plaintiff. It appears that their first recourse was to
21 extract the communication records directly from Nielsen via subpoena. Defendants attempt to
22

01 excuse this by asserting their need for the specific wording of the documents, which they

02 contend is only available through the documents themselves.  (Dkt. No. 11 at 8.)   However,

03 they never explain the importance of the "specific wording" other than to speculate that

04 Plaintiff would, due to the time elapsed since his dialogue with Nielsen, be unable to recall the

05 communications if deposed.  (Id.)

06    Requesters may not skirt the exhaustion requirement by speculating about the

07 alternative source's ability to fulfill their needs.  Shoen I, 5 F.3d at 1297.  By failing to depose

08 Plaintiff, Defendants failed to exhaust all reasonable alternative sources for the privileged

09 information they seek.

10 **ii. Cumulativeness of Information Sought**

11    Nielsen contends that the communications Defendants seek duplicate what they already

12 have or may obtain easily.  Defendants counter that the documents demonstrate Plaintiff's

13 state of mind, and other methods of obtaining the information on the documents will not

14 substitute for the documents themselves.  However, Defendants are merely speculating as to

15 whether an alternative method, such as deposition of Plaintiff himself, will produce different

16 results than the actual documents.

17    The requested documents are all letters and notes to and from Plaintiff.  (Dkt. No. 11 at

18 3-4.)  If Plaintiff's state of mind is all they seek from these communications, they could

19 conceivably obtain it through a direct deposition of Plaintiff; especially in light of the fact that

20 Defendants already possess some of the documents they seek.  (Compare Dkt. No. 10, Ex. D;

21 Dkt. No. 1, Ex. B, E.)  The information they seek from Nielsen is cumulative unless they can

22

ORDER GRANTING THIRD PARTY CAROLYN NIELSEN'S
MOTION TO QUASH SUBPOENA DUCES TECUM, FOR
PROTECTIVE ORDER, AND FOR ATTORNEY'S FEES AND
COSTS PAGE -6

demonstrate that alternative means of procurement will provide insufficient results.

### iii. Relevance of Requested Documents

Nielsen claims that Defendants have failed to show that the requested information is sufficiently relevant. To be relevant in the context of journalist's privilege, the requested information must "go . . . to the heart" of the underlying suit. Shoen II, 48 F.3d at 416. The requesting party must show that the information is actually relevant; "a showing of potential relevance will not suffice." Id.

Defendants contend that the documents are "the definition of relevant" because they "specifically relate to [Plaintiff's] arrest, conviction and prosecution" according to Nielsen's own descriptions of the records. (Dkt. No. 11 at 10.) They claim that the records are "relevant in impeaching Ms. Nielsen herself." (Id.) However, the underlying litigation is a civil rights claim against Defendants. Nowhere in their response do Defendants explain how the documents relate to this civil rights claim. The only explicit relevance claimed (the impeachment of a third party) is merely collateral to Plaintiff's lawsuit.

Combined with the strict construction required by Shoen II for questions of journalist's privilege, Defendants have not sufficiently shown the records' relevance to the "heart" of the underlying litigation.

### IV. Undue Burden

Notwithstanding her invocation of journalist's privilege, Nielsen claims that Defendants' subpoenas also subject her to an undue burden and should be quashed. The Court agrees.

ORDER GRANTING THIRD PARTY CAROLYN NIELSEN'S
MOTION TO QUASH SUBPOENA DUCES TECUM, FOR
PROTECTIVE ORDER, AND FOR ATTORNEY'S FEES AND
COSTS PAGE -7

01    The compulsion of production of irrelevant information is an inherently undue burden.

02 Compaq Computer Corp. v. Packard Bell Elecs., 163 F.R.D. 329, 335-336 (N.D. Cal. 1995).

03 Considerations of journalist's privilege aside, Defendants have failed to establish that any

04 documents in Nielsen's possession are relevant to the underlying civil litigation or are likely to

05 lead to admissible evidence.   Fed R.Civ.P. 26(b)(1).   Defendants' argument that Nielsen has

06 inculpatory evidence is unsupported and speculative.

07    Defendants' discovery requests are found to constitute an undue burden on Nielsen and

08 will be denied for that reason.

09                                    **V. Protective Order**

10    Nielsen moves for a protective order against outstanding and future depositions on the

11 same grounds of privilege as she invoked against Defendants' production request.   As noted

12 supra, the analysis which applies to Nielsen's motion to quash also applies to her request for a

13 protective order.   Los Angeles Mem'l Coliseum Comm'n, 89 F.R.D. at 495.

14    Defendants assert that Nielsen is being a hypocrite by resisting deposition and

15 production of documents to Defendants while agreeing to release the same information to

16 Plaintiff.   (Dkt. No. 11 at 10.)   In reply, Nielsen provides proof that this is not only

17 speculative, but factually untrue.   On June 23, 2010, she communicated to Defendants'

18 counsel that she would resist any deposition or production efforts from anybody, including

19 Plaintiff, on grounds of evidentiary privilege.   (Dkt. No. 14, Exh. F.)   Defendants filed their

20 response to the motion to quash and for protective order on July 12, 2010.   They should have

21 known of Nielsen's intent to invoke evidentiary privilege against all parties' production and

22

ORDER GRANTING THIRD PARTY CAROLYN NIELSEN'S
MOTION TO QUASH SUBPOENA DUCES TECUM, FOR
PROTECTIVE ORDER, AND FOR ATTORNEY'S FEES AND
COSTS PAGE -8

deposition requests.

Nielsen's request for entry of a protective order precluding Defendants from deposing or seeking further discovery from her is granted.

## VI. Attorney's Fees

Finally, Nielsen claims that she is entitled to her attorney's fees and costs under Fed. R. Civ. P. 37(a)(5)(A). If a motion to quash is granted, the court "must … require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Exceptions to this rule are granted when the opposing party's nondisclosure, response, or objection was substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii).

Defendant subpoenaed Nielsen before attempting any kind of discovery beyond written interrogatories with Plaintiff. As Nielsen notes, this scenario is similar to Wright v. Fred Hutchinson Cancer Research Ctr., 206 F.R.D. 679 (W.D. Wash. 2002), a case in which the judge granted attorney's fees. In Wright, the requesting party attempted to subpoena documents from newspaper journalists before pursuing alternative means of discovery. The judge found the subpoenas "coercive" to the extent that they could be expected to have adverse effects on the servee, especially in light of the requestor's failure to pursue other means of discovery first, and granted fees to the burdened party. Id. at 683.

There is little to distinguish Wright from the instant case, but Defendants attempt to do so by repeatedly referring to the fees request as "absurd," noting that Nielsen is an "admitted

friend" of Plaintiff, and implying that Jimenez's response to interrogatory responses was insufficient and justified the subpoenas. (Dkt. No. 11 at 11.) However, this justification is insufficient to trigger the attorney's fees exemption in Fed. R. Civ. P. 37(a)(5)(A)(ii); "the fact that plaintiffs' responses to written discovery were less than satisfactory does not relieve defendants of their obligation to at least attempt to obtain the information through other avenues, such as depositions." Wright, 206 F.R.D. at 682.

Nielsen's request for attorney's fees and costs is granted.

### III. Conclusion

Third party Nielsen's motion to quash the two subpoenas duces tecum is GRANTED. Her motion for a protective order is likewise GRANTED, and applies to all parties in this litigation. Finally, her request for attorney's fees and costs relating to bringing this motion to quash is GRANTED. Counsel is ordered to file a bill of fees and costs with this Court on or before August 31, 2010.

The Clerk is ordered to send copies of this Order to all counsel.

Dated: August 18, 2010.

Marsha J. Pechman
United States District Judge

ORDER GRANTING THIRD PARTY CAROLYN NIELSEN'S
MOTION TO QUASH SUBPOENA DUCES TECUM, FOR
PROTECTIVE ORDER, AND FOR ATTORNEY'S FEES AND
COSTS PAGE -10